# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                    Bankr. Case #09-10384 JKF
THE HARRIS AGENCY, LLC

       Debtor.

_____

PAUL J. WINTERHALTER, P.C.

Appellant.

       v.                                    Case No. 11-4525

ROBERTA A. DeANGELIS
UNITED STATES TRUSTEE

Appellee.

_____

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA BANKRUPTCY CASE NO. 09-10384**

_____

**BRIEF FOR THE APPELLEE, UNITED STATES TRUSTEE**

Ramona D. Elliott
General Counsel

P. Matthew Sutko
Associate General Counsel

Noah M. Schottenstein
Trial Attorney

Department of Justice
Executive Office for United States Trustees
20 Massachusetts Avenue, NW, Ste. 8100
Washington, DC 20530
Tel: 202-307-1399

Dated: August 17, 2011

Roberta A. DeAngelis
United States Trustee

Frederic J. Baker
Assistant United States Trustee

George M. Conway, III
Trial Attorney

Department of Justice
Office of the United States Trustee
833 Chestnut Street, Ste. 500
Philadelphia, PA 19107
Tel: 215-597-4411

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     I.     Statutory Framework . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          A.    The Retention, Compensation, and Payment of Professionals in a Chapter 11 Bankruptcy Case  . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          B.    The United States Trustee's statutory duty to monitor bankruptcy professionals and object to improper fees  . . . . . . . . . . . . . . . 4

     II.    Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.    The Harris Agency and Its Affiliated Entities  . . . . . . . . . . . . . 5

          B.    The Bankruptcy Court's First Disqualification Order  . . . . . . . 5

          C.    The Bankruptcy Court's Second Disqualification Order . . . . . 8

SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     I.     The bankruptcy court did not abuse its discretion by requiring Winterhalter to return its attorney's fees earned after March 9, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          A.    The bankruptcy court did not clearly err in finding that Winterhalter represented an interest adverse to the bankruptcy estate and could therefore be denied compensation under 11 U.S.C. § 328(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

B.     The bankruptcy court did not clearly err when it found that Winterhalter failed to comply with the disclosure requirements of Fed. R. Bankr. P. 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.     The United States Trustee is not estopped from arguing that Winterhalter had a disqualifying conflict of interest based on its representation of Union One in the district court litigation. . . . . . . . 24

A.     Res Judicata   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B.     Collateral Estoppel   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

C.     The Law of the Case Doctrine   . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## CASES

*Abdul-Akbar v. McKelvie,* 239 F.3d 307 (3d Cir. 2001) . . . . . . . . . . . . . . . . . 21, 23

*Adams v. Zarnel (In re Zarnel),* 619 F.3d 156 (2d Cir. 2010) . . . . . . . . . . . . . . . . 4

*Arizona v. California,* 460 U.S. 605 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re BH and P, Incorporated,* 949 F.2d 1300 (3d Cir. 1991) . . . . . . . 17, 20, 21, 27

*Burd v. Walters (In re Walters),* 868 F.2d 665 (4th Cir. 1989) . . . . . . . . . . . . . . . 16

*CFTC v. Weintraub,* 471 U.S. 343 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dery v. Cumberland Casualty and Surety Company (In re 5900 Associate., Inc.),* 468
     F.3d 326 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Duhaney v. Att'y General of U.S.,* 621 F.3d 340 (3d Cir. 2010) . . . . . . . . . . . 24, 26

*FTC v. Lane Labs-USA, Incorporated,* 624 F.3d 575 (3d Cir. 2010) . . . . . . . . . . 20

*Farina v. Nokia Incorporated,* 625 F.3d 97 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . 27

*Ferrara and Hantman v. Alvarez (In re Engel),* 124 F.3d 567 (3d Cir. 1997)   1, 16,

*Gray v. English,* 30 F.3d 1319 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Howard Hess Dental Labs. Incorporated v. Dentsply Intern., Incorporated,* 602 F.3d
     237 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*In re Jade Management Servs.,* 386 F. App'x 145 (3d Cir. 2010)
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19, 22

*Kendall State Bank v. Union One Ins. Grp., LLC*, No. 09-494 (E.D. Pa. 2009) . . . 8

*In re Kisseberth,* 273 F.3d 714 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Kravit, Gass and Weber, S.C. v. Michel (In re Crivello),* 134 F.3d 831 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22

*Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis),* 113 F.3d 1040 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Miller v. U.S. Trustee (In re Independent Engineering Co.),* 197 F.3d 13 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Morgenstern v. Revco D.S., Incorporated (In re Revco D.S., Inc.),* 898 F.2d 498 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mullarkey v. Tamboer (In re Mullarkey),* 536 F.3d 215 (3d Cir. 2008) . . . . . . . . 26

*In re Park-Helena Corporation,* 63 F.3d 877 (9th Cir. 1995) . . . . . . . . . . . . . . . 22

*In re Pillowtex, Incorporated,* 304 F.3d 246 (3d. Cir. 2002) . . . . . . . . 1, 17, 19, 21

*In re Plaza Hotel Corporation,* 111 B.R. 882 (Bankr. E.D. Cal. 1990) . . . . . . . . 19

*Public Interest Research Grp. of N.J. v. Magnesium Elektron, Incorporated,* 123 F.3d 111 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Rome v. Braunstein,* 19 F.3d 54 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 22, 23

*U.S. Trustee v. Price Waterhouse,* 19 F.3d 138 (3d Cir. 1994) . . . . . . . . . . . . 16, 17

*United Artists Theater Company v. Walton (In re United Artists Theater Co.),* 315 F.3d 217 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATUTES

11 U.S.C. § 307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C. § 327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

iv

11 U.S.C. § 327(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 15

11 U.S.C. § 327(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. §§ 328-331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

11 U.S.C. § 328(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

11 U.S.C. § 329(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 329(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 101(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11 U.S.C. § 101(14)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

11 U.S.C. § 1101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

11 U.S.C. §§ 1106-08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 21

11 U.S.C. § 1121c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 158(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 158(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 581(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 586(a)(3)(A), (H) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULES**

Fed. R. Bankr. 2014(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Bankr. 2016(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,6

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1). The bankruptcy court had jurisdiction over the Harris Agency, Inc's chapter 11 bankruptcy case under 28 U.S.C. §§ 157 and 1334.  The Law Offices of Paul J. Winterhalter represented Harris in the case.  The court's final order disqualifying Winterhalter as of March 10, 2009 and requiring it to return fees earned on and after that date was entered on June 2, 2011.  Winterhalter timely filed a notice of appeal from that order under 28 U.S.C. § 158(c)(2) on June 16, 2011.

## STATEMENT OF ISSUES PRESENTED

The question presented is whether the bankruptcy court abused its discretion when it ordered Winterhalter to return attorney's fees because Winterhalter        (1) was disqualified for an actual conflict of interest under 11 U.S.C. §§ 327 and 328(c); and (2) did not disclose its connections with other parties in interest when it applied for employment as required by Fed. R. Bankr. P. 2014(a).

## STANDARD OF APPELLATE REVIEW

A bankruptcy court's decision to disqualify an attorney is reviewed for abuse of discretion.  *In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d. Cir. 2002). A bankruptcy court's decision to deny compensation is also reviewed for abuse of discretion.  *Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 571 (3d

Cir. 1997). Legal questions are reviewed de novo and factual findings are reviewed for clear error. *Id.*

## STATEMENT OF THE CASE

### I.     Statutory Framework

*A.     The Retention, Compensation, and Payment of Professionals in a Chapter 11 Bankruptcy Case*

When the debtor files a petition for relief under chapter 11 of the Bankruptcy Code, the debtor becomes a "debtor-in-possession" of the estate. 11 U.S.C. § 1101. The debtor-in-possession maintains control over the estate's property, but also obtains the rights, obligations, and fiduciary duties of a trustee. 11 U.S.C. §§ 1106-08. This includes the ability to ask the bankruptcy court for permission to employ professionals, including attorneys, to assist the debtor-in-possession with the reorganization of the bankruptcy estate. 11 U.S.C. § 327(a).

Under section 327(a), the debtor-in-possession may employ only professionals who are disinterested persons that do not hold or represent an interest adverse to the estate. *Id.* The Bankruptcy Code defines a "disinterested person" as one who "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other

2

reason." 11 U.S.C. § 101(14)(c).  The bankruptcy court "shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C.  § 327(c).  A professional who does not comply with these requirements at any time during the employment under section 327 can be required to return compensation for services provided.  11 U.S.C. § 328(c).

When the debtor-in-possession seeks approval to employ a professional, Fed. R. Bankr. P. 2014(a) requires the disclosure of any proposed arrangement for compensation and the professional's connections with the debtor, creditors, and any other party in interest.  In addition, the professional to be employed must submit an affidavit in support.  Fed. R. Bankr. P.  2014(a).

Professionals are also required to disclose all compensation paid or agreed to be paid for services rendered or to be rendered in contemplation of the bankruptcy case and the source of such compensation.  11 U.S.C. § 329(a).  That statement must be filed within fourteen days after the petition for relief has been filed, or amended within fourteen days of any payment or agreement that was not previously disclosed.  Fed. R. Bankr. P. 2016(b).  Such compensation is then subject to review by the bankruptcy court, which may cancel the agreement or order the return of any payments when the compensation exceeds the reasonable value of the services.  11 U.S.C. § 329(b).

3

B.      *The United States Trustee's Statutory Duty to Monitor Bankruptcy*
        *Professionals and Object to Improper Fees*

The United States Trustee is an official of the Department of Justice
appointed by the Attorney General to supervise the administration of bankruptcy
cases in this district.  28 U.S.C. § 581(a)(3).  The United States Trustee has a
statutory obligation to review applications for employment and compensation, and
to object to applications the United States Trustee considers to be inappropriate.
28 U.S.C. § 586(a)(3)(A), (H).

Furthermore, the United States Trustee "may raise and may appear and be
heard on any issue in any case or proceeding under this title but may not file a plan
pursuant to section 1121(c) of this title."  11 U.S.C. § 307.  Courts have repeatedly
held that the United States Trustee has standing under section 307 to appear and be
heard on any issue in any bankruptcy case, despite the lack of pecuniary interest in
the outcome.  *See United Artists Theater Co. v. Walton (In re United Artists*
*Theater Co.)*, 315 F.3d 217, 225 (3d Cir. 2003); *see also Adams v. Zarnel (In re*
*Zarnel)*, 619 F.3d 156, 161 (2d Cir. 2010); *Morgenstern v. Revco D.S., Inc. (In re*
*Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990).

4

## II.    Statement of the Facts

### A.    *The Harris Agency and Its Affiliated Entities*

The Harris Agency is an insurance company that was purchased by a group

of investors in 2005.  Those investors also owned other insurance companies,

including Alliance Insurance Services, Archway Insurance Services, and Union

One Insurance Group.  The investors financed the acquisition by having Harris, the

investors, and Union One borrow approximately $3 million.  Tr. of March 10,

2010, at 25, Dkt. No. 210.  The investors then had Archway and Union One lend

nearly $2 million to Harris over the course of two years to cover operating

expenses and loan repayments.  *Id.* at 25-29.

Harris's cash flow remained weaker than expected and the company could

not meet its repayment obligations.  It thus filed a petition for chapter 11

bankruptcy relief on January 20, 2009.  Dkt. No. 1.

### B.    *The Bankruptcy Court's First Disqualification Order*

The same day the case was filed, Harris moved to employ Winterhalter as

bankruptcy counsel under section 327(a) and Rule 2014.  Dkt. No. 6.  Its

application included an affidavit from Winterhalter stating that the firm did not

have "any connection with any party in interest" nor did it represent any interest

adverse to the debtor or the estate.  Dkt. No. 6-1 at 1.  Based on that

5

representation, the bankruptcy court approved its application with the condition that it may be paid only as allowed by the court.  Dkt. No. 11.

Three days later, Winterhalter filed the mandatory Rule 2016 compensation disclosure statement, which revealed for the first time that it had agreed to receive $50,000 for its representation, and that a $23,200 retainer had been paid by Harris and Alliance.  Dkt. No. 12.  It also stated that a source of future compensation would be from "Alliance Ins Services or its affiliates."  *Id.*

The case then proceeded normally, and one year later Winterhalter filed its first application for interim compensation from the bankruptcy estate for its services through the end of 2009.  Dkt. No. 158.  One of the investors in Harris objected to the fee application because Winterhalter had received undisclosed, postpetition payments from Archway and Alliance without prior court approval.  Dkt. No. 176.  The United States Trustee also joined in that objection.  Dkt. No. 177.  In response, Winterhalter corrected its Rule 2016 disclosure statement to reveal for the first time that it had received a total of $77,893 from Archway and Alliance in periodic payments since the commencement of the case.  Dkt. No. 178.

As a result, the United States Trustee moved for an order disqualifying Winterhalter and requiring it to return the improperly paid fees.  Dkt. No. 188. That was because (1) it had failed to comply with the requirements of Rules 2014

and 2016 by not disclosing the relationships to Harris's creditors and the receipt of the postpetition payments; (2) it had improperly accepted fees in violation of the bankruptcy court's employment order; and (3) the payment arrangement created an impermissible conflict of interest that disqualified Winterhalter under 11 U.S.C. § 328. Dkt. No. 188 at 4-10.

The hearing on the disqualification motion explored the corporate relationships of Harris and its related entities. A manager at both Archway and Alliance testified that the "family of companies" — Archway, Alliance, and Union One — had agreed to pay Winterhalter's legal fees for representing Harris. 3/10 Tr. at 30-31. The individual members of these companies, except for the objecting investor, also personally guaranteed Winterhalter's legal fees. *Id.* at 32. And they expected Harris, the chapter 11 debtor, to repay them for the payments made to Winterhalter. *Id.* at 58. The hearing also provided detail on the prepetition loans Archway, Alliance, and Union One had made to Harris. *Id.* at 25-27; 57-59.

The bankruptcy court found that the agreement to pay Winterhalter's legal fees created an actual conflict of interest and prospectively disqualified the firm. Dkt. No. 217 at 10-11. The court was unwilling to require disgorgement of all fees because it was unclear when that actual conflict of interest arose, although it found that an actual conflict existed at least by September 8, 2009. *Id.* at 12-13. It left

7

the amount of fees to be disgorged because of that conflict to be determined at a later hearing. *Id.* at 13-14.

The bankruptcy court also declined to impose sanctions for Winterhalter's failure to disclose the postpetition payments as required by the employment order and Rule 2016 because the court believed Winterhalter's failure was not in bad faith. Dkt. No. 217 at 6-7. Finally, the Court allowed Winterhalter to help select Harris's new counsel and to "assist and cooperate" to ensure that the new counsel "receive[d] all information necessary with regard" to the bankruptcy case. *Id.* at 13.

### C.     The Bankruptcy Court's Second Disqualification Order

Ten days later, Winterhalter filed a second application for compensation, this time seeking fees and expenses through May 10, 2010. Dkt. No. 236. Due to other, unrelated activity in the case, the parties consented to delay the hearing on both the amount to be returned from Winterhalter's first application and the initial consideration of Winterhalter's second application until January 5, 2011.

In the interim period, the United States Trustee discovered that Winterhalter had represented Union One in a district court case — the banks that financed the investors' acquisition of Harris had sued Union One as a guarantor on the note. Dkt. No. 326 at 2 (citing *Kendall State Bank v. Union One Ins. Grp., LLC*, No.

09-494 (E.D. Pa. filed Feb. 4, 2009)).  Winterhalter entered an appearance in that case on March 10, 2009.  Dkt. No. 326, Ex. 2.  But Winterhalter had not disclosed to the bankruptcy court that it had undertaken a representation with potentially adverse consequences for its representation of Harris.

At the January 2011 hearing on Winterhalter's fee applications, the United States Trustee argued that Winterhalter's representation of Union One disqualified the firm as of March 10, 2009, and that all compensation for services from that date forward should be denied.  Tr. of Jan. 1, 2011, at 6-7, Dkt. No. 385.  The bankruptcy court continued the hearing until February 22, 2011, and directed the parties to submit supplemental briefing on the district court litigation.

At the February hearing, the parties explained that the plaintiffs in that case sought damages on the $3 million loan and injunctive relief to prevent Union One from interfering with Harris's clients.  Tr. of Feb. 22, 2011, at 21.  There was an actual conflict of interest because a judgment against Union One would have meant less liability for Harris and thus could free up money for the unrelated, unsecured creditors.  *Id.* at 44.

In opposition, Winterhalter alleged that it had acted to protect Harris from the prospect of a default judgment and there was no conflict in interest because Harris and Union One had a uniform interest based on their co-ownership.  Dkt.

9

No. 399 at 16-17.  Furthermore, even if there was a conflict of interest, Winterhalter argued there was no material conflict because it billed only 1 hour of work on the case.  That was because the district court case had been placed in suspense until after Winterhalter had been disqualified from representing Harris. 2/22 Tr. at 28-29.

The bankruptcy court took the case under advisement and entered its order on June 2, 2011.  It found that Winterhalter had an actual conflict of interest for the purpose of 11 U.S.C. § 328(c) as of March 10, 2009, and that its failure to disclose the representation also violated Rule 2014.  Op. at 22.

The court found that the representation created an actual conflict of interest for three reasons.  First, Harris "could actually have benefitted from a successful suit against Union One.  If Union One had been found liable for and responsible to pay the debt for which it is a co-obligor, the Debtor would have had a related party with whom to negotiate a plan, rather than . . ."  the original lenders.  *Id.* at 23. Furthermore, that Harris "owes Union One $180,000, combined with the two companies' competing interests over their joint debt, shows not only that Harris and Union One do not have identical interests," but that Winterhalter was representing an interest directly adverse to Harris.  *Id.* at 25.

Second, the representation pitted the interests of the estate against the

10

interest of the creditors.  *Id.* at 24.  The court explained that although the interests of Harris's owners may have been the same as the interests of the related entities, including Union One, Winterhalter's duty was to the bankruptcy estate.  *Id.*  The court found that Winterhalter's loyalties were divided because it "would have to choose either between what was best for the estate — all creditors included — or between remaining loyal to the interests of the Debtor's owners."  *Id.*

Third, the interests of Harris and Union One were directly adverse because the injunction sought to prevent Union One from interfering with Harris's client base, and it was in Harris's interest to maintain its client base without interference.  *Id.* at 24-25.

The court also held that denying Winterhalter's fees was an appropriate sanction for Winterhalter's failure to disclose the representation under Rule 2014.  *Id.* at 30.  In particular, the court found that Winterhalter's lack of disclosure constituted a lack of candor in light of its earlier statements that it had no connection with "anyone" involved in the bankruptcy case, while at the same time it was representing Union One and receiving postpetition payments from both Archway and Alliance.  *Id.* at 32.

Accordingly, the court held that Winterhalter must return all fees earned on and after March 10, 2009.  *Id.* at 34.  This appeal followed.

11

## SUMMARY OF THE ARGUMENT

An attorney employed by the debtor-in-possession may have its compensation denied if at any time the attorney does not satisfy the Bankruptcy Code's strict requirements under 11 U.S.C. § 327 that the professional must be (1) disinterested and (2) free from conflicting interests that could compromise the professional's fiduciary duties to creditors and the estate.

In this case, after Winterhalter was employed by Harris, the chapter 11 debtor-in-possession, Winterhalter took on a representation for Union One, a creditor in the bankruptcy case. The representation was for a district court lawsuit in which the plaintiffs sought to recover from Union One on a debt on which Harris was jointly liable and to enjoin Union One from interfering with Harris's client base. And that put the interests of Harris and Union One in direct and substantial conflict. Furthermore, Winterhalter did more than merely fail to disclose this representation; at the same time it was ongoing, Winterhalter repeatedly asserted that it had no connection with Union One.

After the bankruptcy court discovered what had happened, it disqualified Winterhalter and ordered it to return the attorney's fees it had earned since it

became ineligible to represent Harris.  That order should be affirmed for two reasons.

First, under 11 U.S.C. § 328(c), a bankruptcy court may deny compensation to an attorney that ceases to be eligible for employment under section 327 at any time during the period of employment.  Under Third Circuit law, a disqualifying conflict of interest exists when an attorney is in a position that permits it to favor the interests of one client over another; and the Third Circuit has stated that such a conflict generally exists when the attorney represents an owner-guarantor that has been sued on a guarantee for the debtor corporation's debt.  Likewise, the bankruptcy court did not clearly err in finding that Winterhalter had a disqualifying interest because Winterhalter represented both Harris, as the debtor-in-possession, and Union One, as a guarantor for Harris's debt and as a creditor in Harris's bankruptcy case.

Second, under Rule 2014, a bankruptcy court may deny compensation when an attorney has violated the duty to disclose in full all connections with the debtor, creditors, or any party with an interest in the bankruptcy case.  And here the bankruptcy court did not clearly err in finding that Winterhalter violated that duty because Winterhalter failed to disclose the representation and made false statements about its connections with Union One throughout Harris's bankruptcy

case.

On appeal, Winterhalter argues that the bankruptcy court committed clear error because it "has repeatedly refused to appreciate" the interests of the various related entities in this case. But that simply shows that, at best, the bankruptcy court could have decided either way. In fact, Winterhalter does not even allege reversible error because Winterhalter (1) does not argue that the bankruptcy court's findings are without a basis in the record, and thus cannot show that clear error exists; and (2) does not contest the bankruptcy court's alternative and independent basis for denying compensation under Rule 2014. Thus, even if Winterhalter could prevail on the issue of whether it had a disqualifying conflict of interest, the order below could still be affirmed based on the bankruptcy court's Rule 2014 findings.

Accordingly, the bankruptcy court did not abuse its discretion when it required Winterhalter to return fees earned after it had a disqualifying conflict of interest and so the order below should be affirmed.

## ARGUMENT

## I.     The bankruptcy court did not abuse its discretion by requiring Winterhalter to return its attorney's fees earned after March 9, 2010.

In an ordinary civil case, a party typically can pick the counsel of its choice.

14

But in bankruptcy, the situation is different.  Under 11 U.S.C. §§ 327 and 1107, the chapter 11 debtor-in-possession cannot employ the counsel of its choice without court approval.  Court approval can be obtained only if counsel satisfies two criteria: (1) that counsel is "disinterested" under 11 U.S.C. § 101(14); and   (2) that counsel holds or represents no interest adverse to the bankruptcy estate.

The Bankruptcy Code imposes these rigid requirements because the debtor-in-possession is a fiduciary for its creditors.  *See generally CFTC v. Weintraub*, 471 U.S. 343, 355 (1985) (observing that a debtor in possession owes "the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession").  The debtor-in-possession proceeds through bankruptcy in order to protect its creditors, and the bankruptcy court determines what attorney can best help accomplish that goal.  *See* 11 U.S.C. § 327(a) (the court "may" appoint the attorney recommended by the debtor).

A. *The bankruptcy court did not clearly err in finding that Winterhalter represented an interest adverse to the bankruptcy estate and could therefore be denied compensation under 11 U.S.C. § 328(c).*

Under 11 U.S.C. § 328(c), if the professional was improperly qualified or ceases to be qualified "at any time during such professional person's employment under [section 327], the court may deny compensation."  *U.S. Trustee v. Price*

15

*Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994) (quotations omitted).  In this manner, section 328(c) acts "as a retroactive penalty for those professionals whose retention under section 327(a) was improper or who fail to satisfy section 327(a) requirements while working for the estate."  *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 839 (7th Cir. 1998); *see, e.g.*, *Miller v. U.S. Trustee (In re Indep. Eng'g Co.)*, 197 F.3d 13, 17 (1st Cir. 1999) ("The bankruptcy court has continuing authority to revisit an order employing a particular attorney to represent a debtor [under section 328(c)].").

This is true regardless of the source of the payments, because the professional is employed by the estate and all compensation for services rendered to the estate is subject to review and allowance by the bankruptcy court under 11 U.S.C. §§ 328-331.  *Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 571-72 (3d Cir. 1997); *see also Dery v. Cumberland Cas. & Sur. Co. (In re 5900 Assoc., Inc.)*, 468 F.3d 326, 330-31 (6th Cir. 2006) (holding that fees not drawn from the bankruptcy estate remain subject to review); *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1046 (9th Cir. 1997) ("The bankruptcy court may order the disgorgement of any payment made to an attorney representing the debtor in connection with a bankruptcy proceedings, irrespective of the payment's source."); *Gray v. English*, 30 F.3d 1319, 1322 (10th Cir. 1994)

16

(holding that a denial of compensation under section 328(c) was warranted because "reasonable compensation for services rendered necessarily implies loyal and disinterested service") (quotation omitted); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 668 (4th Cir. 1989) ("any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment.").

Accordingly, the bankruptcy court may order an attorney to return fees paid by a third party if the attorney becomes ineligible for employment under section 327 "at any time" during the representation. *See Price Waterhouse*, 19 F.3d at 142; *Engel*, 124 F.3d at 571-72. Disqualification is mandatory if the conflict is "actual" and discretionary if the conflict is "potential." *In re BH & P, Inc.*, 949 F.2d 1300, 1316-17 (3d Cir. 1991).

Under Third Circuit law, an actual conflict exists "if it is likely that a professional will be placed in a position permitting it to favor one interest of an impermissibly conflicting interest." *In re Pillowtex, Inc.*, 304 F.3d 246, 252 (3d Cir. 2002). "A professional may not have *any* conflict with the estate, while a conflict with creditors must be 'material.'" *Id.* at 252 n.4 (emphasis in original). When a potential conflict exists, a bankruptcy court "should generally disapprove employment," but it may approve employment if it "determine[s] whether the

17

efficiency and economy which may favor multiple representation must yield to competing concerns affecting fairness to all parties involved and protection of the integrity of the bankruptcy process." *BH & P*, 949 F.2d at 1316.

In this case, the bankruptcy court did not clearly err in finding that Winterhalter's representation of Union One created a disqualifying conflict of interest under section 328(c) because the record fully supports that conclusion. *See* Op. at 24-27.

First, the bankruptcy court did not clearly err in finding that Winterhalter had an actual conflict because Harris's and Union One's interests in the district court case were directly adverse. There, the plaintiffs sought (1) payment from Union One as co-obligor with Harris on the $3 million loan and (2) an injunction against Union One to prevent it from interfering with or contacting Harris's clients. 2/22 Tr. at 21. A successful suit against Union One thus would have brought two substantial benefits to Harris: the ability to negotiate a plan with its related entities and not its lenders, and the ability to maintain its clients without interference from Union One. Conversely, Union One would be required to satisfy the liability on the loan and be restrained from generating new business from Harris's clients.

Winterhalter's representation of both Harris and Union One placed it "in a position permitting it to favor" the interests of Union One over those of Harris.

18

*See Pillowtex*, 304 F.3d at 252.  Indeed, the Third Circuit has recognized that although no bright line exists, "an actual conflict generally exists where owners-guarantors are being sued on their guarantees of the debtor corporation's debt."  *In re Jade Mgmt. Servs.*, 386 F. App'x 145, 148 (3d Cir. 2010) (unpublished) (citing *In re Plaza Hotel Corp.*, 111 B.R. 882, 980 (Bankr. E.D. Cal. 1990)).  So too here.

Second, the bankruptcy court did not clearly err in finding that Winterhalter had a potential — yet still disqualifying — conflict of interest.  "Because the relationship between the Debtor and Union One was so tangled, [Winterhalter's] involvement in any matter for Union One during the time that it was representing [Harris] — much less a matter that directly impacted Harris — was not advisable." Op. at 26-27.  That finding was supported by facts on the record such as Union One's guarantee of Winterhalter's fees for representing Harris in the bankruptcy case, the $180,000 debt Harris owed to Union One, Harris's liability as a co-obligor on the $3 million loan, and the confusion arising from all of the related entities' cross-liabilities.  *See generally* 3/10 Tr. at 25-27, 30-32, 57-79.  These facts show that the possibility of an actual conflict in this circumstance was not "remote."  *See BH & P*, 949 F.2d at 1316.

Winterhalter's arguments to the contrary are not persuasive.  First,

19

Winterhalter does not show that the bankruptcy court clearly erred when it found the existence of a disqualifying conflict.  Under Third Circuit law, "[a] factual finding is clearly erroneous if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data."  *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010).

Here, Winterhalter alleges that the bankruptcy court "has repeatedly refused to appreciate" the interests of the various related entities in this case.  Appellant's Br. at 12.  But his seven-page litany of supporting evidence shows only that it may have been possible for the bankruptcy court to decide the other way; it does not show that the findings now on appeal were "completely devoid of a credible evidentiary basis."  *Lane-Labs*, 624 F.3d at 582.  If anything, that evidence supports the bankruptcy court's finding that the relationship between Harris and Union One "was so tangled" that dual representation "was not advisable."  Op. at 26-27.

Second, Winterhalter's understanding of the applicable legal principles are flawed.  *See* Appellant's Br. at 21-24.  Even if there was a "materiality" requirement for a conflict arising from the representation of an interest adverse to the estate — and there is not, *Pillowtex*, 304 F.3d at 252 — Winterhalter's "unity of interest" theory would not meet that requirement, as it has no basis in the law of

20

any circuit.  *See* Appellant's Br. at 21.

Instead, the law of the Third Circuit, which applies here, states that when

there is a potential conflict of interest, a bankruptcy court "should generally

disapprove employment," but it may approve employment if it "determine[s]

whether the efficiency and economy which may favor multiple representation must

yield to competing concerns affecting fairness to all parties involved and protection

of the integrity of the bankruptcy process."  *BH & P*, 949 F.2d at 1316.  In its

opening brief, Winterhalter does not mention the factors of efficiency and

economy.  The issue has therefore been waived.  *Abdul-Akbar v. McKelvie*, 239

F.3d 307, 316 n.2 (3d Cir. 2001).  In short, Winterhalter cannot show reversible

error.

B.    *The bankruptcy court did not clearly err when it found that*
      *Winterhalter failed to comply with the disclosure requirements of*
      *Fed. R. Bankr. P. 2014.*

Courts take a dim view of any failure to disclose in full all business

relationships under Rule 2014, and courts consistently uphold the bankruptcy

courts' power to deny an application for employment and to deny all fees when

attorney disclosures fall short of the mark.  *See, e.g.*, *In re Kisseberth*, 273 F.3d

714, 721 (6th Cir. 2001) (upholding denial of all fees where counsel failed to

21

disclose fees pursuant to section 329); *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998) ("failure to disclose is sufficient grounds to revoke an employment order and deny compensation"); *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995) ("Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees"); *Rome v. Braunstein*, 19 F.3d 54, 62 (1st Cir. 1994) (finding that counsel "can lay no claim of right to a lesser sanction" than disgorgement of all fees when counsel fails to disclose all material facts relevant to a conflict of interest under section 327(a)).

Under Fed. R. Bankr. P. 2014, which implements sections 327 and 328(c), "[a]ll facts that may be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate must be disclosed." *Jade Mgmt. Servs.*, 386 F. App'x at 150 (quotation omitted).  "The duty is one of complete disclosure of all facts, and, if the duty is neglected, even innocently, the offender should stand no better than if the duty to disclose had been correctly performed." *Id.*

Because these rules rely on self-disclosure, "as soon as counsel acquires even constructive knowledge reasonably suggesting an actual or potential conflict . . . a bankruptcy court ruling should be obtained." *Rome*, 19 F.3d at 59.  Attorneys

22

that fail to make "full and spontaneous" disclosures proceed at their own risk and may have all compensation denied under Rule 2014 and section 328(c).  *Id.* at 60.

Here, the record shows that Winterhalter did not reveal its representation of Union One, despite having multiple opportunities.  Dkt. No. 207 at 7 (stating "I do not represent any party other than the Debtor" in a brief on the first motion for disqualification); 3/10 Tr. at 70 (denying a connection with "anyone else involved in this case").  Knowledge of the representation only came to light after the United States Trustee disclosed the information in a filing prior to the hearing on Winterhalter's attorney's fees.  Dkt. No. 326, Ex. 2.  Those facts support finding that Winterhalter violated its obligation and are sufficient to support the bankruptcy court's order denying all fees.  *Rome*, 19 F.3d at 62.

Winterhalter does not contest this part of the bankruptcy court's order.  Any contention of error has therefore been waived.  *Abdul-Akbar*, 239 F.3d at 316 n.2.  This Court may affirm order below on that basis alone.

23

**II.      The United States Trustee is not estopped from arguing that**

**Winterhalter had a disqualifying conflict of interest based on its**

**representation of Union One in the district court litigation.**

Winterhalter argues that the United States Trustee was barred under res

judicata, collateral estoppel, and the law of the case doctrine from arguing that

Winterhalter's compensation should be denied under section 328(c) and Rule 2014

as of March 2009, based on its representation of Union One in the district court

litigation, because the bankruptcy court had previously found that Winterhalter had

a disqualifying conflict of interest as of September 2009.  Appellant's Br. at 29.

That argument is wrong, as none of those doctrines apply to this case.

     *A.      Res Judicata*

"Res judicata, also known as claim preclusion, bars a party from initiating a

second suit against the same adversary based on the same 'cause of action' as the

first suit."  *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010).  "The

doctrine of res judicata bars not only claims that were brought in a previous action,

but also claims that could have been brought."  *Id.*

To determine whether a claim should have been brought, "the focus of the

inquiry is whether the acts complained of were the same, whether the material facts

alleged in each suit were the same, and whether the witnesses and documentation

24

required to prove such allegations were the same." *Id.*  Thus, a second request for a similar type of relief, but based on different factual circumstances, is not barred by res judicata.  *Id.* at 350 (holding that the government had a "new cause of action" for a removal order when the charges were based on different criminal conduct).

Here, res judicata does not apply because the material facts supporting the earlier order denying compensation as of September 2009 are entirely different from the material facts supporting the order denying compensation as of March 2009, which is the order now on appeal.  The former was based on (1) the existence of postpetition payments from Archway, one of the entities related to Harris; (2) Winterhalter's failure to disclose the receipt of such payments; and   (3) Winterhalter's involvement in drafting a reorganization plan that proposed Archway would receive 50% ownership interest in Harris.  Dkt. No. 217 at 10-11. The latter was based on (1) Winterhalter's representation of Union One in the district court litigation, which was adverse to Harris; and (2) Winterhalter's failure to disclose that representation.  Op. at 23.

Winterhalter's acts were different in each instance.  The facts the United States Trustee alleged in support of each claim were different in each instance. And the proof required to prove those claims were different in each instance.  As a

25

result, res judicata does not apply.  *Duhaney*, 621 F.3d at 350.

B.     *Collateral Estoppel*

"Under the doctrine of collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Howard Hess Dental Labs. Inc. v. Dentsply Intern.*, *Inc.*, 602 F.3d 237, 240 (3d Cir. 2010) (quotation omitted).  Collateral estoppel "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and ... promot[es] judicial economy by preventing needless litigation."  *Mullarkey v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 225 (3d Cir. 2008) (quotation omitted).

"The following four elements are required for the doctrine to apply: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated;   (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  *Howard Hess*, 602 F.3d at 247-48.

Here, collateral estoppel does not apply because the issue that was adjudicated in the earlier order was not identical to the issue adjudicated in the order now on appeal.  *See* supra Part II.A.

C.      *The Law of the Case Doctrine*

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  The doctrine only applies to questions of law that are decided within the same case an — identical issue decided in a separate action does not qualify as law of the case. *Farina v. Nokia Inc.*, 625 F.3d 97, 117 (3d Cir. 2010).  And it "does not limit a federal court's power; rather, it directs its exercise of discretion." *Public Interest Research Grp. of N.J. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).

Here, the law of the case doctrine does not apply because there has been no determination of a rule of law.  After all, courts determine "whether an actual conflict exists in light of the particular facts of each case."  *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991).

## CONCLUSION

For these reasons, the United States Trustee respectfully requests that this Court affirm the order below.


Date: August 17, 2011        ROBERTA A. DeANGELIS
                UNITED STATES TRUSTEE

                Frederic J. Baker
                Assistant United States Trustee

            By:  s/  George M. Conway
                George M. Conway, Trial Attorney
                Department of Justice
                Office of the United States Trustee
                833 Chestnut Street, Suite 500
                Philadelphia, PA 19107
                (215) 597 4411