# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE HARRIS AGENCY, LLC, | ) | Case No. 09-10384 (JKF) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| PAUL J. WINTERHALTER, P.C. | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 11-4525 (ABB) |
| v. | ) | |
| | ) | |
| OFFICE OF THE UNITED STATES | ) | |
| TRUSTEE, and R. TODD NEILSON | ) | |
| Trustee of THE HARRIS AGENCY, LLC, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

## BRIEF OF APPELLEE
## <u>CHAPTER 11 TRUSTEE OF THE HARRIS AGENCY, LLC</u>

Bruce Grohsgal (Bar No. 42775)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bgrohsgal@pszjlaw.com

*Attorneys for the Chapter 11 Trustee of The Harris Agency, LLC*

Dated: August 17, 2011

# Table of Contents

**PAGE**

I PRELIMINARY STATEMENT ........................................................................ 1

II STATEMENT OF THE ISSUES PRESENTED ............................................ 1

III STANDARD OF APPELLATE REVIEW .................................................. 4

IV STATEMENT OF THE CASE ..................................................................... 4

ARGUMENT ........................................................................................................ 12

    A.    The Bankruptcy Court Did Not Err in Disallowing Appellant's
Fees and Expenses ................................................................................ 13

            1.    The Bankruptcy Court's Finding  that Appellant had
an Actual Conflict of Interest as well as a Potential
Conflict of Interest was not Clearly Erroneous ................. 13

            2.    Appellant's Conflict from the Union One
Representation Was Not Previously Tried, and the
Bankruptcy Court Had the Power and the Duty to
Consider the Union One Representation in
Connection with Appellant's Fee Applications ................. 20

            3.    The Bankruptcy Court Did Not Err in Partially
Disallowing Appellant's Fees and Expenses .................... 25

    B.    The Bankruptcy Court Had Jurisdiction and Authority to Order the
Disgorgement of Fees and Expenses to a Non-Debtor Entity .................. 28

CONCLUSION ..................................................................................................... 29

# TABLE OF AUTHORITIES

**Rules**

Fed. R. Bankr. P. 8013 ...................................................................................4


**Cases**

Creditors' Comm. v. Spada (In re Spada),
  903 F.2d 971 (3d Cir. 1990) ......................................................................4

In re Abbotts Dairies of Pa., Inc.,
  788 F.2d 143 (3d Cir. 1986) ......................................................................4

In re Balco Equities Ltd., Inc.,
  345 B.R. 87 (Bankr.S.D.N.Y. 2006) .......................................................29

In re BH & P, Inc.,
  949 F.2d at 1315 ...............................................................................27, 28

In re Busy Beaver Bldg. Centers, Inc.,
  19 F.3d 833 , 841 (3rd Cir. 1994)............................................................25

In re eToys, Inc.,
  331 B.R. 176, 189 (Bankr.D.Del. 2005)..................................................26

In re Filene's Basement, Inc.,
  239 B.R. 850, 856 (Bankr.D.Mass.1999) ................................................27

In re Independent Engineering Co., Inc.,
  197 F.3d 13, 15-17 (1st Cir. 1999) ..........................................................29

In re Keller Financial Services of Florida, Inc.,
  248 B.R. 859 (Bankr.M.D.Fla. 2000)......................................................29

In re Leslie Fay Cos.,
  175 B.R. 525, 533 (Bankr.S.D.N.Y.1994). .......................................26, 27

In re Martin,
  817 F.2d 175, 180 (1st Cir.1987) .............................................................25

In re Pillowtex, Inc.,
  304 F.3d 246, 251 (3rd Cir. 2002).............................................13, 14, 19

In re Sharon Steel Corp.,
  871 F.2d 1217 (3d Cir. 1999) ....................................................................4

*Marvel Entertainment Group, Inc.,*
    140 F.3d 463, 476 (3d Cir.1998) ...................................................14

*Meridian Bank v. Alten,*
    958 F.2d 1226 (3d Cir. 1992) ......................................................4

*Salazar v. Bono,*
    130 S.Ct. 1803, 1825, 176 L.Ed.2d 634 (2010)...........................24

*Taylor v. Sturgell,*
    553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008) .....................23

*U.S. v. Tohono O'Odham Nation,*
    131 S.Ct. 1723, 1730, 179 L.Ed.2d 723 (2011)...........................22

**Statutes**

11 U.S.C § 327(a) ...................................................13, 14, 27

11 U.S.C § 327(c) ...................................................14

11 U.S.C § 328(c) ...................................................3, 13, 26

11 U.S.C § 101(14)...................................................13

# I PRELIMINARY STATEMENT

The Appellant, Paul J. Winterhalter, P.C. ("PJW, PC" or "Appellant"), has appealed from the final order of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered on June 2, 2011 (Docket No. 417), (the "Final Fee Order") partially disallowing fees and expenses sought by Appellant pursuant to Bankruptcy Code section 330 for its representation of the Debtor, the Harris Agency, LLC (the "Debtor"). The Bankruptcy Court's Memorandum Opinion Supporting the Final Fee Order also was entered on June 2, 2011 (Docket No. 416) (the "Fee Opinion").

Appellant in its brief misstates the Bankruptcy Court's findings of fact and conclusions of law, and mischaracterizes the Fee Opinion. For the reasons set forth in this Brief, the Final Fee Order should be affirmed.

The Bankruptcy Court's decision was not clearly erroneous and should be upheld.

# II STATEMENT OF THE ISSUES PRESENTED

Appellant's Statement of the Issues Presented on this appeal is as follows:

1.      Whether the Bankruptcy Court erred when it determined that a material conflict of interest existed when Debtor's counsel filed an entry of appearance in a related party's separate non-bankruptcy proceeding to stay litigation to effectuate a settlement among the Debtor, the related party and the Debtor's secured creditors which settlement was approved by the Bankruptcy Court?

2.     Whether the Bankruptcy Court erred in applying a *per se* disqualification of Debtor's counsel when the firm entered an appearance in a separate litigation proceeding on behalf of a company who was a creditor in the bankruptcy case?

3.     Whether the Office of the United States Trustee and the subsequently appointed Chapter 11 Trustee are collaterally estopped or otherwise barred from re-litigating the matters involving an earlier Order of the Bankruptcy Court which disqualified counsel for the Debtor following the Bankruptcy Court's May 10, 2010 Ruling based on facts and evidence which existed prior to the earlier contested hearing on disqualification?

4.     Whether the Bankruptcy Court has jurisdiction or authority to direct repayment of legal fees to a non-debtor entity which voluntarily paid the fees?

Appellant's Statement of these issues misconstrues the issues decided by the Bankruptcy Court and mischaracterizes Bankruptcy Court's findings of fact and conclusions of law.

First, the Bankruptcy Court's conclusion that Appellant was not disinterested and had an actual conflict of interest in its representation of both the Debtor and Union One Insurance Group, LLC ("Union One"), an asserted creditor of the Debtor, was not limited to its finding that Appellant had filed an entry of appearance as counsel to Union One on March 10, 2009 in the non-bankruptcy proceeding in which the Debtor was not a party. The Bankruptcy Court also did not find that the purpose of Appellant's representation of Union One from and after March 10, 2009 (if not earlier) was to stay litigation to effectuate a settlement among Union One, the Debtor, and the Debtor's secured lenders. Appellant's Statement, ¶¶ 1 and 2; Fee Opinion, pp. 23-30.

2

Second, the Bankruptcy Court did not relitigate its May 10, 2010 disqualification of Appellant (Appellant's Statement, ¶ 3). That prior disqualification was based on and limited to Appellant's failure to disclose the payments it had received from January 2009 to January 2010 from Archway Insurance Services, LLC ("Archway"), an asserted creditor of the Debtor which stood to obtain a 50% interest in the Debtor upon confirmation of a proposed Chapter 11 Plan filed by the Debtor, and on Appellant's failure to disclose its other payment arrangements with Archway. Fee Opinion, pp. 9-10. The issue addressed by the Bankruptcy Court's Final Fee Order and Fee Opinion --- Appellant's representation of a second asserted creditor, Union One Insurance Group, LLC, from and after March 10, 2009 (if not earlier) --- had not been disclosed to the Bankruptcy Court by Appellant (who had the duty to do so) or by any other party at the time of the May 10, 2010 disqualification and played no role in the Bankruptcy Court's May 10, 2010 ruling.

Instead, the Bankruptcy Court in the matter appealed from rightfully found that Appellant was not disinterested and had an actual conflict of interest as well as a potential conflict of interest from and after its March 10, 2009 undisclosed representation of Union One, which was both a co-obligor of the Debtor under a secured loan and which itself asserted an unsecured claim against the Debtor. Fee Opinion, pp. 25, 30. Accordingly, the Bankruptcy Court disallowed Appellant's compensation from and after that date both (1) pursuant to Bankruptcy Code § 328(c), which provides for the disallowance of fees and expenses of a debtor's counsel "if at any time" during its employment counsel is not a disinterested person or represents or holds an interest

3

adverse to the debtor's estate, and (2) as a sanction for Appellant's failure at any time to disclose its adverse interest.

Pursuant to Bankruptcy Rule 8010(a)(2), Appellee states the issue addressed by Appellant's Statement paragraphs 1-3 as follows:

1 – 3.  Whether the Bankruptcy Court erred in partially disallowing Appellant's fees and expenses on the grounds that the Appellant (1) was not disinterested, and represented an interest adverse to the interest of the Debtor and its estate from and after March 10, 2009 (if not earlier) and (2) failed to disclose that representation?

Appellee is not dissatisfied under Bankruptcy Rule 8110 with Appellant's Statement, ¶4, and this Brief addresses that issue as framed by Appellant.

## III  STANDARD OF APPELLATE REVIEW

A bankruptcy court's findings of fact are not to be set aside unless clearly erroneous. *See* Fed. R. Bankr. P. 8013; *Creditors' Comm. v. Spada (In re Spada)*, 903 F.2d 971, 975 (3d Cir. 1990).  Conclusions of law are subject to *de novo* review.  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).   The Court considering an appeal must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992), citing, *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1999).

## IV  STATEMENT OF THE CASE

Facts applicable to this appeal are set forth in the findings of fact made by the Bankruptcy Court in the Fee Opinion and the Final Fee Order and are incorporated as

4

if fully set forth herein. Certain of those facts and other relevant facts are set forth below and are referred to in connection with Appellee's argument.

On January 20, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Pennsylvania. Record – 5.[1]

On the January 20, 2009 Petition Date, Appellant filed its Application for employment. Record – 6. Paul J. Winterhalter, Esquire, stated in his Verified Affidavit that accompanied the Application that, to the best of his knowledge, information and belief, neither he nor any member of the Appellant had any connection with any party in interest or represented an interest adverse to the Debtor or its estate in matters in which he or his firm was to be engaged. Record – 6.

Union One is one of a "family of companies," including Archway, Alliance Insurance Services, LLC ("Alliance"), and Nevada Investment Partners, LLC ("NIP"), all of which are owned and controlled by H. James Agnew, Deborah Agnew,[2] Eric K. Bossard and Randall Siko, that had agreed to pay Appellant's legal fees in the Debtor's Chapter 11 case. Record 25-26 (Transcript of March 10, 2010 Hearing [hereafter "3/10 Tr."], pp. 17-18; 30. Messrs. Agnew, Bossard and Siko also agreed to pay Appellant's fees. 3/10 Tr., p. 32.

---

[1] References to "Record - ___" are to the Record on Appeal designated by Appellant and transmitted by the Clerk of the Bankruptcy Court on July 15, 2011 (Bankruptcy Court Docket No. 439).
[2] H. James Agnew and Deborah Agnew and spouses. 3/10 Tr., p. 18.

DOCS_DE:172222.5 59923-001

All of the equity in the Debtor is owned by NIP, which is in turn owned by Mr. Agnew, Ms. Agnew and Messrs. Bossard, Siko and Fred Milbert. Record – 15, p. 6; 3/10 Tr., p. 18. The equity interests in the other members of the "family" are held directly or indirectly by Mr. Agnew, Ms. Agnew, and Messrs. Bossard, Siko and Milbert.[3] See e.g., 3/10 Tr., pp. 21-23; 30-31, 34.

Union One was the co-obligor with the Debtor of a $2.9 million secured loan obtained in September 2007 (the "Brooke Loan") in connection with the Debtor's purchase of book of business from Brown & Brown Insurance of Nevada. 3/10 Tr. at 25.

On February 4, 2009 the lenders under the Brooke Loan, Kendall State Bank et al. (the "Consortium Banks"),[4] filed their Complaint in the United States District Court for the District of Pennsylvania against Union One, seeking payment of the $2.7 million balance of the Brooke Loan and enforcement of the provisions of the Brooke Loan agreement that prohibited Union One from diverting or attempting to divert to Union One any of the Debtor's customers (the "Kendall State v. Union One Action"). Supplemental Record – 4.[5] The Debtor was not a defendant in the Kendall State v. Union One Action.

On March 10, 2009, Appellant entered its Appearance for Union One in the Kendall State v. Union One Action. Supplemental Record – 5.

---

[3] Mr. Milbert's ownership interest in NIP and the related companies, not at issue in this Appeal, is disputed by the members. 3/10 Tr., pp. 18, 23; Fee Opinion, p. 7.

[4] The Consortium Banks were not the original lenders under the Brooke Loan, but acquired the Brooke Loan at a later date. Record – 93.

[5] References to "Supplemental Record - ___ " are to the additional Record on Appeal designated by the Chapter 11 Trustee, R. Todd Neilson, Appellee, and transmitted by the Clerk of the Bankruptcy Court on August 2, 2011 (Bankruptcy Court Docket No. 444).

The Appearance entered by Appellant in the District Court unqualifiedly requested the District Court to "[k]indly enter our [the Appellant, PJW PC's] appearance on behalf of Defendant Union One Insurance Group, LLC in the above-captioned matter." Appellant in particular made no mention in its Appearance in the Kendall State v. Union One Action of its representation of the Debtor in its Chapter 11 Bankruptcy Case.

Appellant did not file a supplemental Verified Statement or otherwise disclose to the Bankruptcy Court at that time that it had undertaken the representation of Union One in the Kendall State v. Union One Action. Fee Opinion, p. 31.

On May 5, 2009, Appellant, as Debtor's counsel, submitted to the Bankruptcy Court a Stipulated Agreement and Final Order (the "Stipulated Order") regarding the Debtor's use of cash collateral in the Debtor's Chapter 11 Case. Record – 13.[6] The Stipulated Order referred to the Kendall State v. Union One Action, but made no mention of Appellant's representation of Union One in that action. Neither did the signature pages of the Stipulated Order make show that Appellant was acting as counsel to both parties, since the Stipulated Order was signed not by counsel to the Debtor (Appellant) or by counsel to Union One (also Appellant), but by Mr. Bossard as Managing Partner of the Debtor and as Co-Managing Member of each Union One and NIP. Record – 13, pp. 2-3 and 10.

---

[6] The Stipulated Order is attached as Exhibit 1 to Appellant's Brief.

DOCS_DE:172222.5 59923-001

The Stipulated Order required the Debtor – and not the co-obligor Union

One – to pay on the Approval Date of the Stipulated Order all accrued and unpaid interest

on the Brooke Loan through the Approval Date. The Stipulated Order also required the

Debtor – and, again, not the co-obligor Union One – to make adequate protection

payments of $5,000 per month to the Consortium Banks. Record – 13, p. 4, ¶¶ 2.1 and

2.3.

On September 8, 2009, Appellant filed on behalf of the Debtor a proposed

Plan and Disclosure Statement. Record – 14-15.

The proposed Plan provided for the payment in full of the Brooke Loan by

the Debtor – and, again, not the co-obligor Union One – over a period of 78 months.

Record – 14, §IV.2. The proposed Plan did not provide for *any* payment of the Brooke

Loan (even in part) by the co-obligor, Union One, which Appellant had represented for at

least 6 months prior to the filing of the Plan.

Also under the Plan, (1) Archway – another non-debtor member of the

"family" – would receive 50% of the equity in the reorganized Debtor, (2) Trinity Capital

Management LLC ("Trinity Capital") – controlled by Randall Siko (an owner of NIP that

in turn owned the Debtor), and the holder of a disputed, subordinated postpetition claim –

would receive the other 50% of the equity in the reorganized Debtor, (3) Messrs. Agnew,

Bossard and Siko would become the directors and officers of the reorganized Debtor, and

(4) "confirmation of the Plan," had it occurred, would have "act[ed] as a judicial

determination which" would "vest all property of the bankruptcy estate of the Debtor" ---

8

including all claims against Union One, Archway, Alliance, NIP, Trinity Capital, Mr. Agnew, Ms. Agnew, Messrs. Siko and/or Bossard, or any of their respective other affiliates --- "into the single entity Reorganized Debtor," owned and controlled by Messrs. Agnew, Siko and Bossard, effectively releasing those parties from any claims the Debtor might have against them. Record – 14, §§ II.21, IV.3, V.B.3, and VI.A.1.

Appellant did not disclose its representation of Union One to the Bankruptcy Court when it filed the Plan and Disclosure Statement in September, 2009. Fee Opinion, p. 31.

Appellant also failed to disclose that it was receiving ongoing, postpetition payments from Archway and Alliance from January 21, 2009, shortly after the Petition Date, through January 21, 2010, during the period that Appellant represented Union One in the District Court and while the Debtor's Plan was pending before the Bankruptcy Court. These postpetition payments totalled between $77,893 and $87,893, and were received by Appellant from Archway and Alliance prior to the Bankruptcy Court's consideration or approval of any fee application filed by the Appellant in the Debtor's bankruptcy case. One of these payments – in the amount of $10,000 – was actually received by Appellant on March 10, 2009, the same day on which Appellant entered its appearance for Union One in the Kendall State v. Union One Action. Record – 19.

Appellant only disclosed its receipt of these payments more than a year after they began, on January 28, 2010 (Record – 19), the day after Fred Milbert disclosed

the payments in his objection to Appellant's first fee application. Record – 17; Supplemental Record – 22.

The United States Trustee, following the disclosure of these payments by Mr. Milbert and the belated disclosure by Appellant, moved to disqualify Appellant from its representation of the Debtor, on the grounds that (1) Appellant had failed to comply with the disclosure requirements of the Bankruptcy Code and Rules in its retention and fee applications, (2) Appellant had improperly accepted payments of its fees without the Bankruptcy Court's having approved those fees, and (3) Appellant's payment arrangements with the non-debtor entities created a disqualifying conflict of interest. Record – 20 and 23.

Appellant opposed the United States Trustee's motion to disqualify it (Record – 24), and the Bankruptcy Court held a hearing on the disqualification motion on March 10, 2010. 3/10 Tr.

The Bankruptcy Court learned for the first time at the March 10, 2010 hearing that Archway asserted that it was a creditor of the Debtor, and that Archway and Alliance expected the Debtor to repay them for any payments they made to Appellant for Appellant's fees and expenses in representing the Debtor. 3/10 Tr., pp. 25-27; 57-58.

No mention was made at the March 10, 2010 hearing of Appellant's as yet undisclosed representation of Union One in the Kendall State v. Union One Action.

On May 10, 2010 the Bankruptcy Court ruled on the United States Trustee's motion and disqualified Appellant from further representing the Debtor. The

10

Bankruptcy Court based its ruling on the ground that the payments from and payment arrangements with Archway - an asserted creditor of the Debtor who would acquire a 50% ownership of the Debtor under the proposed Plan - created an actual conflict of interest, at least at the time the Plan was prepared. Appellant's as yet undisclosed representation of Union One formed no part of the Bankruptcy Court's ruling. Record – 27 (the "Disqualification Order"). Appellant filed its Motion for Reconsideration of the Disqualification Order, which the Bankruptcy Court denied. Record – 46, p. 11. Appellant did not appeal from the Disqualification Order or the denial of the Motion for Reconsideration. Record – 46, p. 11.[7]

Appellant filed its second fee and final fee application on May 20, 2010. Record – 28.

On July 29, 2010, the Bankruptcy Court first became aware of Appellant's representation of Union One beginning on March 10, 2009 (if not earlier) in the Kendall State v. Union One Action. Record – 46, p. 12. This new information came to the Bankruptcy Court's attention not through any disclosure by Appellant, but by the United States Trustee's Supplemental Objection to Appellant's first fee application. Record – 37, ¶6 and 38, ¶6, Fee Opinion, p. 31.

---

[7] Appellant strikingly chose to disregard both the Bankruptcy Court's May 10, 2010 Disqualification Order and the requirements of Pennsylvania Disciplinary Rule of Professional Conduct 1.9 regarding Appellant's duties to a former client, the Debtor, including (1) by filing for *the Debtor, which Appellant no longer represented*, on May 20, 2010 a motion to dismiss the Debtor's Chapter 11 Bankruptcy Case (Record – 31), and (1) by objecting to and opposing the court-appointed Chapter 11 Trustee;s motion for turnover of *the Debtor's records and documents* by Mr. Agnew, Ms. Agnew, Messrs. Bossard and Siko, Archway, Alliance, Union One, Trinity Capital and others, in a pleading that recited that the objection was joined in by those parties, filed on October 21, 2010, more than five months after entry of the Disqualification Order. Supplemental Record – 34.

11

The Bankruptcy Court held the hearing for final approval of Appellant's first and second fee applications on February 22, 2011. Record – 45.

The Bankruptcy Court entered its Final Fee Order and Fee Opinion on June 3, 2011, finding that Appellant had an actual conflict of interest as well as a potential conflict of interest from and after March 10, 2009 (if not earlier), denying approval of Appellant's fees and expenses from and after that date, and ordering disgorgement of any amounts paid to Appellant with respect to the amounts disallowed. Record – 46.

Appellant appealed.

## ARGUMENT

### I.

The Bankruptcy Court did not err in disallowing Appellant's fees and expenses on the grounds that Appellant (1) was not disinterested and represented an interest adverse to the interest of the Debtor and its estate from and after March 10, 2009 (if not earlier), and (2) failed to disclose that representation. The Bankruptcy Court had jurisdiction and authority to order disgorgement of those fees and expenses.

12

A.    **The Bankruptcy Court Did Not Err in Disallowing Appellant's**

      **Fees and Expenses**

**1. The Bankruptcy Court's Finding that Appellant had an Actual Conflict of Interest as well as a Potential Conflict of Interest was not Clearly Erroneous**

The Bankruptcy Court's finding that the Appellant had an actual conflict of interest as well as a potential conflict of interest and was not disinterested from and after March 10, 2009 (if not earlier), and failed to disclose that conflict, was not clearly erroneous. Accordingly, the Bankruptcy Court's disallowance of Appellant's fees and expenses from and after that date, both as a sanction and pursuant to the express dictates of Bankruptcy Code § 328(c), was proper and should be affirmed.

A law firm may serve as counsel to a debtor in possession of trustee in a bankruptcy proceeding only if it does not "hold or represent an interest adverse to the estate" and is "disinterested." 11 U.S.C § 327(a). The Bankruptcy Code's definition of "disinterested" requires the absence of both material adverse interests and other disqualifying relationships. 11 U.S.C § 101(14).

The Third Circuit has considered the statutory requirements for retention of counsel in several opinions. The Court has noted that, though "[t]he term 'actual conflict of interest' is not defined in the Code" it "has been given meaning largely through a case-by-case evaluation of particular situations arising in the bankruptcy context." *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3rd Cir. 2002), *citing In re BH&P, Inc.*, 949 F.2d 1300, 1315 (3d Cir.1991).

13

A "conflict is actual, and hence per se disqualifying, if it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *In re Pillowtex, Inc.*, 304 F.3d at 251, *citing In re BH&P, Inc.*, 949 F.2d at 1315.

*In re Marvel Entertainment Group, Inc.,* the Court reiterated its holding in *BH&P* as follows: "(1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an *actual conflict of interest*; (2) the district court may within its discretion - pursuant to § 327(a) and consistent with § 327(c) - disqualify an attorney who has a *potential conflict of interest* and (3) the district court may not disqualify an attorney on the *appearance of conflict* alone." *Marvel Entertainment Group, Inc.,* 140 F.3d 463, 476 (3d Cir.1998) , *citing In re BH&P, Inc.,* 949 F.2d at 1300.

The "denomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based upon that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion." *In re Marvel Entertainment Group, Inc.,* 140 F.3d at 476, citing *In re BH&P, Inc.,* 949 F.2d at 1316-1317.

The Bankruptcy Court's finding that Appellant's representation of Union One on or before March 10, 2009 created an actual conflict of interest was not clearly erroneous. Fee Opinion, p. 23. Union One, a non-debtor, was the co-obligor with the

14

Debtor under the Brooke Loan for repayment of the largest and only significant secured claim in the case, and was also an asserted creditor in the Debtor.

Appellant by undertaking the representation of Union One was placed in a "position permitting it to favor the interest" of Union One and its and the Debtor's principals, rather than the interest of the Debtor, its estate and creditors, who were the proper recipients of Appellant's loyalty and professional services. This fact without more constituted an actual, disqualifying conflict of interest under the Third Circuit precedent. Fee Opinion, pp. 23-24.

The fact that Union One and the principals of Union One and the other companies that they controlled had guaranteed Appellant's fees, and that certain of those companies were paying those fees, and Appellant's concealment of both the Union One representation and those payments and payment arrangements, intensified this actual conflict. Fee Opinion, p. 26; 3/10 Tr., pp. 30-31.

Appellant then acted on this actual conflict, seeking and obtaining results that favored the interests of Union One and its principals and were harmful to the interests of the Debtor and its estate and creditors. As found by the Bankruptcy Court, Appellant in the Kendall State v. Union One Action opposed an injunction sought against Union One that would have kept Union One from contacting the Debtor's clients, its main asset.[8] Fee Opinion, pp. 24-25; Supplemental Record – 4-10. Appellant also

---

[8] The Chapter 11 Trustee's sale of the Debtor's business, for $2 million, indicates the value of these customer relationships. Appellant, seven months post-disqualification, opposed this proposed prior representation of the Debtor,

successfully protected Union One from paying the Brooke Loan under which it was a co-obligor, payment of which would have benefitted the Debtor because it could have enabled the Debtor to negotiate a better plan than the Plan that the Debtor through conflicted counsel and the Debtor's insider principals proposed. Fee Opinion, p. 23; Record 14. The Stipulated Order obtained by Appellant (and attached as Exhibit 1 to Appellant's Brief) required the Debtor – and not the co-obligor Union One – to pay all accrued and unpaid interest on the Brooke Loan through the Approval Date, and required the Debtor – and, again, not the co-obligor Union One – to make adequate protection payments of $5,000 per month to the Consortium Banks. Record – 13, p. 4, ¶¶ 2.1 and 2.3. The proposed Plan that Appellant asserts was contemplated by the Stipulated Order (Appellant's Brief, p. 20) provided for the payment in full of the Brooke Loan by the Debtor – and, again, not the co-obligor Union One – over a period of 78 months. Record – 14, § IV.2, pp. 8-9.

Appellant had an actual conflict of interest even if it had not taken these actions in furtherance of the very evil that the rule is meant to protect against, a fact that Appellant in its Brief completely misses. Instead Appellant urges this Court to accept its argument that "[w]hat the Bankruptcy Court has repeatedly refused to appreciate is the true unity of interests between the Debtor, Nevada Investment Partners, LLC and Union One Insurance Group, LLC during all of the relevant time periods." Appellant's Brief, p. 13. Most of the facts alleged by Appellant in support of this "unity of interest" explanation only underscore the potential for conflicts between the Debtor and its

16

principals and their related companies and Appellant's representation of those conflicting interests. Appellant's Brief, pp. 14-19.

Some of Appellant's statements, specifically those regarding its disqualifying representation of Union One, bear specific refutation.

Appellant asserts that while negotiations were proceeding following the commencement of the Kendall State v. Union One Action "it was necessary to protect the Debtor and the other co-borrowers from the automatic entry of a default judgement in the District Court due to the failure to enter an appearance on behalf of the Defendant." Appellant's Brief, p. 20. As the Bankruptcy Court correctly found, the Debtor's and Union One's interests in the Kendall State v. Union One Action were not indentical but were in conflict, and Appellant's actions in that case "protected" the co-obligor Union One's interest to the detriment of the Debtor's and its creditors' interest. Fee Opinion, p. 23-28.

Appellant also fails to recognize that Union One could easily have hired *other* counsel to protect its interests in the Kendall State v. Union One Action to prevent against the default judgment. Appellant's Brief, pp. 19-20. Moreover, even if Union One had failed to engage other counsel, the feared default judgment in the Kendall State v. Union One Action would have been against Union One only, since the Debtor was not a defendant in that case. Supplemental Record – 4.

Appellant also asserts that following its undertaking the Union One representation the Debtor, Union One and the Brooke Loan lenders "reached an

17

agreement which would form the foundation for the Debtor proposing a plan of

reorganization which enabled the bank to receive increased payments on its outstanding

loan, and allowed for the suspension of the Union One Litigation in Federal Court. This

agreement was reduced to a Stipulated Order which was submitted and approved by the

Bankruptcy Court by Order dated May 5, 2009," and which Appellant has attached as

Exhibit 1 to Appellant's Brief. Appellant's Brief, p. 20 and Exhibit 1. Notably absent

from Appellant's statement is what *the Debtor, its estate and creditors* got from the deal.

The Stipulated Order required the Debtor – and not Union One – to pay on the Approval

Date of the Stipulated Order all accrued and unpaid interest on the Brooke Loan through

the Approval Date, and to make adequate protection payments of $5,000 per month to the

Consortium Banks. Record – 13, p. 4, ¶¶ 2.1 and 2.3.[9] No Plan provisions are set forth

in the Stipulated Order, and the Plan that was proposed by the Debtor through Appellant

as Debtor's counsel four months later required payment in full of the Brooke Loan *by the*

*Debtor*, and did not provide for *any* payment of the Brooke Loan (even in part) by Union

One, which Appellant had represented for at least 6 months prior to the filing of the Plan

in September 2009. Record – 14, §IV.2, pp. 8-9.[10] What the Stipulated Order did

---

[9] Appellant's suggestion that its representation of Union One benefitted the Debtor because the use of cash collateral thereby was obtained for 12 months (Appellant's Brief, p. 29) is especially ludicrous in this regard. Had Union One paid the Consortium Banks in connection with the Kendall State v. Union One Action, as sought by the Consortium Banks, there would have been no further need to obtain the Consortium Banks' consent to the use of cash collateral. The Consortium Banks would have been out of the picture.

[10] Appellant's representation of Union One was still unknown to the Bankruptcy Court when it approved the Stipulated Order. Notably, though the Stipulated Order referred to the Kendall State v. Union One Action, it made no mention of Appellant's representation of Union One in that action. Record – 13, p. 2-3. Neither did the signature pages of the Stipulated Order show that Appellant was acting as counsel to both parties, since the Stipulated Order was signed not by counsel to the Debtor (Appellant) or by counsel to

18

accomplish, to the benefit of Union One and at significant cost to the Debtor, was the Consortium Banks' forebearance in their action against Union One, and their placing the Kendall State v. Union One Action against Union One on the suspense docket. Record – 13, pp. 6-7, ¶ 5.

The simple facts are as follows. Appellant undertook the representation of Union One, which already asserted a claim against the Debtor, in a suit to which the Debtor was not a party, regarding a matter that was central to the Debtor's Chapter 11 case, the relief sought in which included both (1) payment of the Brooke Loan, the largest claim and only significant secured claim in the case, on which Union One was the co-obligor, and (2) preventing Union One from poaching the Debtor's customers which were its primary asset. Fee Opinion, pp. 23-25. By so doing Appellant was likely to find itself in a position from which it would be permitted to favor one interest (that of Union One and its principals) over an impermissibly conflicting interest (that of the Debtor, its estate and creditors). *In re Pillowtex, Inc.*, 304 F.3d at 251, citing *In re BH&P, Inc.*, 949 F.2d at 1315.

This case does not involve a merely "technical" or "non-disqualifying" conflict, or "the mere existence of an intercompany claim" among debtors, as Appellant suggests. Appellant's Brief, p. 28. It is on the opposite end of the spectrum of impermissible conflicts. Indeed, the qualification of "likely" is surplussage here.

---

Union One (also Appellant), but by Mr. Bossard as Managing Partner of the Debtor and as Co-Managing Member of each Union One and NIP. Record – 13, p. 10.

Appellant not only was "likely" to find itself in a position from which it could favor other interests --- which is all that is required for an actual conflict of interest --- but upon undertaking the Union One representation Appellant *immediately was able* to favor the interests of Union One and its principals, and it proceeded to do so.

The Bankruptcy Court correctly found, in addition, that Appellant's simultaneously representing and advising both the Debtor and the non-debtor Union One (an asserted creditor of the Debtor) with respect to the debt to the Consortium Banks on which they were co-obligors was a potential conflict in and of itself, in the absence of any involvement by Appellant in the Kendall State v. Union One Action, a conflict that the Bankruptcy Court determined was heightened by the facts of Union One's guaranty of Appellant's fees and the entanglement of the affairs of Union One with those of the Debtor. Fee Opinion, pp. 26-27.

The Bankruptcy Court's finding that Appellant had both an actual conflict of interest and a potential conflict of interest from and after March 10, 2009 was not clearly erroneous.

**2. Appellant's Conflict from the Union One Representation Was Not Previously Tried, and the Bankruptcy Court Had the Power and the Duty to Consider the Union One Representation in Connection with Appellant's Fee Applications**

The issues of Appellant's representation of Union One and Appellant's final fee application were never litigated before the Bankruptcy Court, contrary to Appellant's assertions. Appellant's Brief, pp. 29-32. Simply put, Appellant concealed its representation of Union One from the Bankruptcy Court and the Bankruptcy Court

20

learned of it from a third party's pleading long after the March 10, 2010 hearing on the United States Trustee's motion to disqualify Appellant.

The sole matter before the Bankruptcy Court at the March 10, 2010 hearing that resulted in Appellant's disqualification on May 10, 2010 was the United States Trustee's motion to disqualify Appellant from its representation of the Debtor, on the grounds that (1) Appellant had failed to comply with the disclosure requirements of the Bankruptcy Code and Rules in its retention and fee applications regarding the payment of its fees, (2) Appellant had improperly accepted payments of its fees without the Bankruptcy Court's having approved those fees, and (3) those payment arrangements with the non-debtor entities created a disqualifying conflict of interest. Record – 20 and 23; 3/10 Tr. The Union One matter never came up..

This appeal is from the Bankruptcy Court's Final Fee Order on Appellant's first and second fee applications under Bankruptcy Code section 330. The Bankruptcy Court in the Final Fee Order disallowed Appellant's fees and expenses under Bankruptcy Code section 328(c) and as a sanction for Appellant's having undertaken a postpetition representation of Union One, a non-debtor creditor, in a matter central to the Debtor's case. The Bankruptcy Court rightfully found, as set forth above, that Appellant's representation of Union One created an actual conflict of interest, as well as a potential conflict of interest, and that Appellant had wrongfully failed to disclose that representation to the Bankruptcy Court.

21

Claims preclusion or res judicata bars "repetitious suits involving the same cause of action" once "a court of competent jurisdiction has entered a final judgment on the merits." *U.S. v. Tohono O'Odham Nation*, 131 S.Ct. 1723, 1730, 179 L.Ed.2d 723 (2011), quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948). "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring 'claims arising from the same transaction.'" *Id.*, quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 482, n. 22, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

The Bankruptcy Court when it entered the Disqualification Order did not enter any judgment (final or otherwise) on the merits of Appellant's representation of Union One in the Kendall State v. Union One Action. The Disqualification Order did not involve the same cause of action --- the United States Trustee's motion to disqualify that the Bankruptcy Court previously decided was not Appellant's first and second application for final approval of its fees on which the Final Fee Order was entered and from which this appeal was taken. Nor do the facts in the two actions overlap. The motion to disqualify was based on Appellant's receipt of undisclosed payments from and fee arrangements with Archway and other third parties. The essential fact before the Bankruptcy Court on Appellant's final fee application was the undisclosed representation by Appellant of Union One beginning on March 10, 2009 or earlier. Claims preclusion is inapplicable.

22

"Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008), quoting *New Hampshire* v. *Maine*, 532 U.S. 742, 748-749, 121 S.Ct. 1808 (2001). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" issue preclusion along with claims preclusion "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.*, *quoting Montana v. United States,* 440 U.S. 147, 153–154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

The fact of Appellant's representation of Union One in the Kendall State v. Union One Action was not actually litigated or resolved at the March 10, 2010 hearing on the United States Trustee's motion to disqualify Appellant in connection with its undisclosed receipt of fees and fee arrangements. The Union One representation was still concealed from the Bankruptcy Court and had not yet been uncovered by the United States Trustee. Nor did the United States Trustee, which was not yet aware of the Union One representation, or the Chapter 11 Trustee, who had not yet been appointed, have any opportunity to litigate the consequences of the Union One representation at the March 10, 2010 hearing. Issue preclusion also is inapplicable.

The law of the case doctrine "comes into play only if an issue" a court is "asked to resolve has already been decided in the same litigation." *Salazar v. Bono*, 130

23

S.Ct. 1803, 1825, 176 L.Ed.2d 634 (2010), *citing Quern v. Jordan*, 440 U.S. 332, 347, n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

The issue of the actual conflict arising from Appellant's representation of Union One was never litigated or decided by the Bankruptcy Court, nor was the issue of approval of Appellant's fees and expenses ever before the Bankruptcy Court prior to the hearing that resulted in the entry of the Final Fee Order appealed from by Appellant.

Appellant's assertions of claim and issue preclusion and law of the case estoppel and, simply put red herrings.

Moreover, the Bankruptcy Court was obligated to consider the Union One representation when it considered Appellant's fee applications, regardless of whether the United States Trustee or the Chapter 11 Trustee or any other party in interest had filed an objection. The doctrines of claims preclusion, issue preclusion and the law of the case essentially are aimed at keeping parties – not courts - from vexatiously litigating and re-litigating claims and issues over and over again, in an effort to win in the end. The Bankruptcy Court was not bound by those doctrines in a fee application proceeding involving a professional authorized by the Bankruptcy Court to represent a debtor, nor was the Bankruptcy Court obligated to approve Appellant's fees and expenses in full even if the United States Trustee or the Chapter 11 Trustee had failed to object or been precluded from objecting.

To the contrary, the Third Circuit has held that "[b]eyond possessing the power, we think the bankruptcy court has a *duty* to review fee applications,

24

notwithstanding the absence of objections by the United States trustee ('UST'), creditors, or any other interested party, a duty which the Code does not expressly lay out but which we believe derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest." *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833 , 841 (3rd Cir. 1994), *citing* 11 U.S.C.A. § 105(a) and *In re Martin,* 817 F.2d 175, 180 (1st Cir.1987) (referring to the "bankruptcy court's fundamental responsibility to monitor the integrity of the proceedings before it").

The issue of Appellant's actual conflict as well as potential conflict that arose upon its representation of Union One was never litigated and was not barred by claims or issue preclusion or the doctrine of the law of the case. Under the clear mandate of the Third Circuit, the Bankruptcy Court was duty-bound to decide that issue in connection with Appellant's request for final approval of its fees and expenses.

### 3. The Bankruptcy Court Did Not Err in Partially Disallowing Appellant's Fees and Expenses

The Bankruptcy Court disallowed Appellant's fees and expenses from and after March 10, 2009 on two grounds.

First, the Bankruptcy Court disqualified Appellant and disallowed Appellant's fees and expenses from the March 10, 2009 date on which the conflict arose under Bankruptcy Code section 328(c), which provides that "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person" employed under the Bankruptcy Code "if, at any time" during such professional

25

person's employment, it "is not a disinterested person, or represented or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c); Fee Opinion, p. 34. The Banruptcy Court found that Appellant represented an interest adverse to the interest of the estate and was not disinterested as of March 10, 2009 (if not earlier), and its disallowance of Appellant's fees and expenses from and after that date was appropriate.

Second, the Bankruptcy Court noted that Appellant never disclosed its Union One representation or its other connections, and that there was "little reason to believe that, in the absence of diligence on the part of the UST and the Debtor's creditors, full disclosure of the Firm's connections ever would have been made by Winterhalter." Fee Opinion, pp.30-32, *citing In re Frascella Enterprises, Inc.*, 2006 WL 1530256, at *6 (Bankr.E.D.Pa. 2006).

The Bankuptcy Court's decision was proper on this ground also. Disclosure "goes to the heart of the integrity of the bankruptcy system." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr.D.Del. 2005), quoting *B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236 (Bankr.E.D.Ca. 1988). "Therefore, the duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate. *Id.*, *citing In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr.S.D.N.Y.1994).

26

"The bankruptcy court must be given timely and complete disclosure by the debtor's attorney of all connections with parties in interest in the case to 'exercise its own ongoing affirmative responsibility to root out impermissible conflicts of interest' under Bankruptcy Code §§ 327(a) and 328(c)." *Id* at 189-190, *citing Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994) and *In re BH & P, Inc.,* 949 F.2d at 1315. "Consequently, Bankruptcy Rule 2014 requires that the attorney seeking employment disclose to the Court *all connections* with parties in interest in the case, rather than furnishing only those which appear to implicate 'disinterestedness' or 'adverse interest' concerns under section 327(a). *Id* at 190, *citing In re Filene's Basement, Inc.,* 239 B.R. 850, 856 (Bankr.D.Mass.1999) (the requirements of Bankruptcy Rule 2014 "transcend those of § 327(a), as they mandate disclosure of all connections with the [applicant] rather than being limited to those which deal with disinterestedness."). "Furthermore, the duty to disclose is ongoing." *Id* at 190.

"So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees." *Id., quoting In re Leslie Fay Cos.,* 175 B.R. at 533.

The Bankruptcy Court's disallowance of Appellant's fees and expenses from and after the commencement of its March 10, 2009 representation of Union One was an appropriate sanction for Appellant's failure at any time to disclose this representation to it.

The Bankruptcy Court also disqualified Appellant as Debtor's counsel as of the date on which the evidence showed that Appellant's actual conflict arose. Fee Opinion, p. 17. Such disqualification was mandatory upon the finding of the actual conflict and was within the Bankruptcy Court's discretion upon the finding of the potential conflict. *In re Marvel Entertainment Group, Inc.,* 140 F.3d at 476, *citing In re BH&P, Inc.* It is absurd to suggest that Appellant should be paid as Debtor's counsel from and after the date on which Appellant was disqualified.

Appellant's appeal from the disallowance of its fees and expense from and after March 10, 2009, should be denied.

## B.  The Bankruptcy Court Had Jurisdiction and Authority to Order the Disgorgement of Fees and Expenses to a Non-Debtor Entity

Appellant argues, finally, that the Bankruptcy Court cannot order the disgorgement of fees and expenses paid to it by the insiders. Appellant asserts in support of this position that if "compensation is being paid by someone other than the Debtor, a request that the fees be approved by the Bankruptcy Court is not required." Appellant's Brief, p. 32. This is a non-sequitur. *Appellant* sought approval of its fees by the Bankruptcy Court (Record – 17, 28), likely because Archway and Alliance expected the Debtor to repay them for any payments they made to Appellant on account of Appellant's fees and expenses in the bankruptcy case. 3/10 Tr., pp. 25-27; 57-58. Appellant requested the Bankruptcy Court's approval and allowance of its fees and expenses and is estopped from raising the issue that such approval might not have been required.

28

Moreover, the Bankruptcy Court's jurisdiction and authority to disallow fees and expenses includes the power to order the disgorgement to third parties or the estate of amounts paid to an estate professional, including sums paid to that professional by third parties. *In re Independent Engineering Co., Inc.*, 197 F.3d 13, 15-17 (1st Cir. 1999); *In re Balco Equities Ltd., Inc.*, 345 B.R. 87, 91, 120 (Bankr.S.D.N.Y. 2006); *In re Keller Financial Services of Florida, Inc.*, 248 B.R. 859, 873-874, 887-888 (Bankr.M.D.Fla. 2000).

## CONCLUSION

The Bankruptcy Court did not err in its ruling. Accordingly, the Bankruptcy Court's order should be affirmed and the appeal should be dismissed.

Dated: August 17, 2011
        Wilmington, Delaware

                    PACHULSKI STANG ZIEHL & JONES LLP

                    Bruce Grohsgal (Bar No. 42775)
                    919 North Market Street, 17th Floor
                    Wilmington, DE  19899-8705 (Courier 19801)
                    Telephone:  (302) 652-4100
                    Facsimile:  (302) 652-4400
                    Email:   bgrohsgal@pszjlaw.com

                    Counsel for the Chapter 11 Trustee